**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil Action No.** |
| **$2,200,000 U.S. CURRENCY (Bowles),** | : | |
| **Defendant,** | : | |

: : : : : : : : :

## VERIFIED COMPLAINT FOR FORFEITURE

Plaintiff, United States of America, by its attorneys, Rod Rosenstein, United States Attorney for the District of Maryland, and Philip S. Jackson, Assistant U.S. Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is a civil forfeiture action against U.S. currency involved in violations of the Controlled Substances Act that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## THE DEFENDANTS IN REM

2.      The defendant currency consists of is $2,200,000 in U.S. Currency.

3.      The defendant U.S. Currency was seized on or about July 25, 2012, from Wells Fargo Bank, 7 St. Paul Street, Baltimore City, from a bank account #XXXXXX3269 in the name of Chelsea Dawn Bowles, pursuant to the execution of a search and seizure warrant in the State and District of Maryland.

4.      Since seizure, the defendant currency has been and presently is in the custody of the United States Marshal Service.

## JURISDICTION AND VENUE

5.     Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant currency.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 21 U.S.C. §881(a)(6).

6.     This Court has *in rem* jurisdiction over the defendant currency under 28 U.S.C. §1355(b).

7.     Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district and pursuant to 28 U.S.C. §1395 because the currency is located in this district.

## BASIS FOR FORFEITURE

8.     The defendant currency is subject to forfeiture pursuant to 21 U.S.C. §881(a)(6) because it is proceeds or was derived from proceeds furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, constituted proceeds traceable to such an exchange, and was used and intended to be used to facilitate such violation.

## FACTS

9.     The forfeiture is based upon, but not limited to, the evidence outlined in the attached Application and Affidavit for Search and Seizure Warrant of Special Agent Brian Stine, Drug Enforcement Administration, which is incorporated herein by reference.

**WHEREFORE,** the plaintiff prays that all persons who reasonably appear to be potential claimants with interests in the defendant currency be cited to appear herein and answer the complaint; that a Warrant of Arrest *in rem* be issued to the U.S. Marshal Service commanding the arrest of the defendant currency; that the defendant currency be forfeited and condemned to

the United States of America; that upon Final Decree of Forfeiture, the United States Marshal

dispose of the defendant currency according to law; and that the plaintiff have such other and

further relief as this Court deems proper and just.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: _____
Philip S. Jackson
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

## VERIFICATION

I, Philip S. Jackson, declare under penalty of perjury as provided by 28 U.S.C. §1746,

that the foregoing Complaint for Forfeiture is based on reports and information furnished to me

by the Drug Enforcement Administration, and that everything contained therein is true and

correct to the best of my knowledge and belief.

11/28/12
Date

_____
Philip S. Jackson
Assistant United States Attorney

12-3453SAG  12-3454SAG

**Affidavit in Support of Application for Seizure Warrant**

This affidavit is made in support of an application for a seizure warrant targeting funds now on deposit in Wells Fargo Bank accounts a) #8964400553 in the name of M&C Wholesale (Target Account 1) and b) #7347073269 (Target Account) in the name of Chelsea Bowles; the funds and property held by Wells Fargo representing proceeds of illegal controlled substance analogue sales made by M&C Wholesale and therefore subject to seizure and forfeiture pursuant to 21 U.S.C. §881(a)(6).

## YOUR AFFIANT

Your Affiant Brian Stine, being duly sworn, hereby deposes and states as follows:

Your affiant, Brian Stine, is employed as a Special Agent (SA) by the Drug Enforcement Administration (DEA), and has so been since July 1996.  Your affiant is currently assigned to the Washington Field Division, Baltimore District Office, and investigates violations and violators of Title 21 of United States Code primarily within the District of Maryland.  Prior to becoming a Special Agent, your affiant was employed as a Detective First Class with the St. Mary's County Sheriff Office, St. Mary's County (Maryland) for approximately five year.  Your affiant has received specialized training and participated in investigations relating to the possession, manufacture, distribution, importation of illegal drugs, as well as methods used to conceal and finance illegal drug transactions and drug diversion.

Your affiant is an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510 (7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.



Your affiant has arrested and/or participated in the arrest of numerous persons for violations of Federal and State narcotics statutes.  Your affiant has authorized and/or participated in the execution of numerous search and seizure warrants that have targeted violations and violators of the Federal and State criminal narcotics statutes.  Your affiant has participated in all aspects of narcotics investigations, including physical surveillance, execution of search warrants, undercover transactions, court ordered wiretap monitoring, analysis of phone and financial records, and arrests of numerous drug traffickers.  Your affiant has debriefed numerous defendants, confidential informants, and other witnesses having extensive knowledge of the inner workings of major narcotics trafficking organizations.  Your affiant has also spoken on numerous occasions with other experienced narcotics investigators concerning the methods and practices of drug traffickers and money launderers.  Through these investigations, his training and experience, and conversations with other law enforcement personnel, your affiant has become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds.  Your affiant is further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

## I. Statement of Probable Cause

Based on the facts contained in this affidavit, there is probable cause to believe that within the above-described premises there is evidence related to the distribution of controlled substance analogues within the United States, and to manufacture controlled substance analogues for the purpose of distribution, in violation of Title 21, United States Code, Sections 802(32), and 846.

### A. Applicable Statutes

-2-



1. Title 21 U.S.C. section 802 (32)(A) reads (emphasis and parenthetical added):

The term "controlled substance analogue" means "a substance – the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II; [and either] which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II."

2. Title 21 U.S.C. section 813 reads:

A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in Schedule I.

### B. Undercover Purchases

Agents of the DEA have conducted an investigation targeting The Tobacco Stop since September, 2011. As outlined below, The Tobacco Stop is a retail store located at 5 Bel Air South Parkway, Suite 1627, BelAir (Harford County), Maryland, which sells tobacco and related supplies, as well as an illegal controlled substance analogue substance known as "Hysteria", which has effects similar to marijuana. This investigation was initiated based on information received from a credible and reliable source of information (SOI).

In September, 2011, the SOI provided information to DEA Tactical Diversion Squad Group 59 that The Tobacco Stop was selling a synthetic drug packaged under the name



"Hysteria", which by its packaging purported to be "potpourri". Your affiant knows from his involvement in this investigation, that abusers of "Hysteria" have reported a similar and/or greater effect than marijuana, which is a Schedule I controlled dangerous substance. Through the course of this investigation, law enforcement has ascertained through investigative reports and tax records that The Tobacco Stop is owned by an individual named Kyu TaeYI.

After receiving this information, on September 22, 2011, law enforcement officers arranged an undercover purchase of "Hysteria" from The Tobacco Stop. In preparation for the undercover purchase, a DEA undercover officer (hereafter "UC") was provided with $450.00 US to purchase an amount of "Hysteria", and was also wired with an audio and video recording device prior to entering The Tobacco Stop. Once inside The Tobacco Stop, the UC observed a male working behind the counter who was later identified as Dev Bahadur HAMAL (HAMAL). The UC asked HAMAL whether there was any "Hysteria" for sale. HAMAL nodded in the affirmative, and then reached under the counter near the cash register, and offered the UC a black zip-lock bag labeled, "1 gm HYSTERIA potpourri, 100% Marshmallow leaf not for human consumption." The UC then asked HAMAL how much the "Hysteria" cost, and HAMAL told the UC that 1 gram of Hysteria cost $20.

The UC then completed the transaction, handing HAMAL approximately $21.20, which including sales tax was the total purchase price. After paying for the "Hysteria", the UC asked HAMAL if "you smoked this stuff." HAMAL replied in the affirmative, and explained to the UC that inhalation through smoking is the method used to ingest "Hysteria"; this despite package instructions that Hysteria was "not for human consumption".

After completing the undercover purchase, the "Hysteria" was sent to the DEA Mid-Atlantic Laboratory where it was chemically analyzed by certified forensic chemists. Their



analysis indicated that the active ingredient in "Hysteria" was 1-(Fluoropentyl)-3-(1-naphthoyl) indole (AM2201) (hereafter referred to as "AM2201/Hysteria"), which is an analogue of 1-pentyl-3-(1-naphthoyl)indole (JWH-018), which itself is a Schedule I Controlled Dangerous Substance (hereafter referred to as "JWH-018"). JWH-018 was scheduled as a controlled dangerous substance on March 1, 2011.

On November 14, 2011, a second undercover purchase of AM2201/Hysteria at The Tobacco Stop was attempted. On that day, the same UC was again provided approximately $200.00 US to conduct the undercover transaction, and again was wired with an audio and video recording device prior to entering The Tobacco Stop. Once inside The Tobacco Stop, the UC again observed HAMAL working behind the counter. The UC asked HAMAL for 2 packets of "Hysteria", and in response HAMAL explained that it would be cheaper to purchase the 3-gram packet of "Hysteria", as opposed to buying two 1-gram packets. On that advice, the UC then purchased the 3-gram packet of "Hysteria" for $ 47.00. After the purchase was completed, the UC explained to HAMAL that after smoking the "Hysteria", the UC's pipe was not functioning properly. HAMAL recommended rolling papers to the UC, and based on HAMAL's recommendation, the UC purchased a packet of E-Z Wide brand slow-burning rolling papers from HAMAL at The Tobacco Stop. TFO David Metzler knows that rolling papers are commonly used to roll marijuana-type substances into cigarette form for consumption. HAMAL then warned the UC to be careful using the rolling papers because "Hysteria" is, "very strong".

As outlined above, the Controlled Substances Analogue Enforcement Act (as codified at 21 U.S.C. §813) provides that controlled substance analogues, to the extent that they are intended for human consumption, be treated as Schedule I controlled substances for the purposes of criminal prosecution. The term "controlled substance analogue" means "a substance -- (i) the



chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II; [and either] (ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or (iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II." per 21 U.S.C. §802(32)(A) (emphasis and parenthetical added). Thus, in order for AM2201/Hysteria to be considered an "analogue", and therefore treated as a Schedule I controlled substance, it must meet the two requirements of 21 U.S.C. §802(32)(A), and be intended for human consumption pursuant to 21 U.S.C. §813. As set forth more fully below, your affiant believes that AM2201/Hysteria meets these criteria.

With respect to the first requirement of 21 U.S.C. §802(32)(A)(i), i.e., that the chemical structure be substantially similar to the chemical structure of a Schedule I or II controlled substance, according to the certified chemists of DEA's Mid-Atlantic Laboratory, (1) 1-(5-Fluoropentyl)-3-(1-naphthoyl) indole , (the chemical make-up of AM2201/Hysteria), shares substantial chemical structural similarities with the Schedule I substance, 1-pentyl-3-(1-naphthoyl) indole (the chemical make-up of JWH-018, a Schedule I controlled substance). With respect to the second requirement of 21 U.S.C. §802(32)(A)(ii), according to DEA forensic chemists the pharmacological effect of AM2201/Hysteria is likely to be the same as the effect of the synthetic cannabinoid JWH-018, as Schedule I controlled substance.



Under 21 U.S.C. §813, the government is also required to show that the analogue substance was intended for human consumption. Your affiant knows from his training and experience that synthetic and analogue substances are frequently packaged with labeling indicating "not for human consumption" in an attempt to protect the manufacturers from prosecution. The AM2201/Hysteria purchased from The Tobacco Stop in the present case is so labeled. However, during the undercover purchase on September 22, 2011, the UC specifically asked HAMAL if "you smoke this stuff.", and HAMAL responded in the affirmative. During the second purchase on November 14, 2011, the UC specifically explained that his/her pipe was not functioning properly after smoking the "Hysteria", and HAMAL then asked the UC if the UC was using a glass pipe, and recommended that the UC try rolling papers instead. Your affiant is aware through his training, knowledge and experience that marijuana is commonly smoked by using a glass pipe and/or rolling papers. Accordingly, based on these conversations, HAMAL was clearly aware that AM2201/Hysteria is ingested into the body by inhalation.

### C. December 14, 2011 Search Warrant

On December 14, 2011, members of the DEA Tactical Diversion Group and the Harford County (Maryland) Sheriff's Office entered the Tobacco Stop at 5 Bel Air South Parkway, Suite 1627, Bel Air Maryland, and executed a search warrant issued by a judge of the State of Maryland's District Court. Seized from the location were, approximately 400 packages labeled "Hysteria", approximately 30 packages labeled "Game Over", and approximately 17 packages labeled "Black Sabbath", as well as other similar products. Also found during the search warrant were sale invoices from Daniel BOWLES (BOWLES) indicating the shipment of "Hysteria, "Game Over" and "Black Sabbath" by him to The Tobacco Stop. Chemical analysis of the seized packages labeled "Hysteria", "Game Over" and "Black Sabbath" by chemists at the DEA



Mid-Atlantic Laboratory revealed that those items contained AM2201, which as outlined above is an analog of JWH-018, a Schedule I controlled substance.

### D. April 3, 2012 Controlled Phone Call to Dan BOWLES

On April 3, 2012, DEA Task Force Officer (TFO) Dave Metzler, TFO Glenn Hester and SA James Weekes met with a confidential source (CS), who while under law enforcement supervision placed a controlled (monitored and recorded) telephone call to (949)400-2975. This phone number was found on invoices recovered during the execution of the search warrant at The Tobacco Stop attributable to that retail establishment's receipt of prior deliveries of suspected JWH-018 analogs from Daniel BOWLES. When the confidential source placed the call, a male answering to the name "Dan" answered the phone and engaged the confidential informant in a conversation. During the course of that phone call, "Dan" agreed to send a sample package of his products. "Dan" told the CS that he currently carries "Brain Freeze", "Black Sabbath", "Game Over" and "Dr. Feelgood", and further indicated that he did not sell "Hysteria" anymore and that "Brain Freeze" was his best seller. The confidential source then ordered an amount of that substance, and directed that delivery was to be made to the Dragon's Den Smoke House, 1730 Fleet Street in Baltimore, Maryland, a retail business.

### E. April 4, 2012 Seizure

On April 4, 2012, your affiant and TFO Metzler were contacted by Christina Scott, who is employed at the Dragon's Den Smoke House, regarding the arrival of a package. That same day, the Agents responded to the Dragon's Den, where they met with Ms. Scott. During their meeting with Ms. Scott, she turned over to them a FedEx envelope, that contained sixteen (16) individual items variously packaged as "Dr. Feelgood"; "Game Over XXX"; "Brain Freeze" and "Black Sabbath". The FedEx envelope also contained a) a cover letter from M&C Wholesale,



from an individual who identified himself as "Hy Energy", who included contact information

phone number (949)636-7469 (which according to Verizon Wireless records is a phone number

subscribed to by Hy JESSOP) and an e-mail address of hyenergy4u@yahoo.com (which

according to Yahoo! records is an email account subscribed to by Hy JESSOP), and b) one

invoice/price sheet bearing the M&C Wholesale name and phone number for Hy JESSOP.

The DEA agents then took custody of the envelope's contents, and processed the

evidence for safekeeping and future chemical analysis.

### F. April 5, 2012 Seizure

On April 5, 2012, at approximately 2:40 p.m., TFO Glenn Hester was contacted by an

employee of the Dragon's Den Smoke Shop regarding the recent delivery of a package.

On April 5, 2012, at approximately 3:00 p.m., TFOs Glenn Hester and Greg Utz responded to

the Dragon's Den Smoke Shop in Baltimore, and there met employee Christina Scott.

Ms. Scott showed the agents a FedEX parcel containing twenty (20) individual items variously

packaged as "Dr. Feelgood"; "Game Over XXX"; "Brain Freeze" and "Black Sabbath". The

FedEx package also contained one invoice/price sheet with the M&C Wholesale letterhead (the

same company name as found on the paperwork in the envelope of items delivered on April 4,

2012) having a contact phone number (949) 400-2975 (which according to ATT records is a

phone subscribed to by Ratchanee MCAULEY), and is the _   ie phone number over which the

CS had contacted "Dan" on April 3, 2012, described above.  This FedEx package was addressed

from Daniel BOWLES, M&C Wholesale, 27324 Camino Capistrano, Suite 155, Laguna Niguel,

CA 92677.  BOWLES' phone number, (949)400-2975, also appeared on the FedEx label. The

package was then taken into DEA custody and transported to the DEA office, where the Agents

processed the evidence for safekeeping and future chemical analysis.



### G.  Analysis of Spice Products Seized on April 4 and 5, 2012

During May, 2012 the DEA chemist working on this case e-mailed agents investigating

this matter, and indicated that the items received on April 4, 2012 did contain a known

analogue of 1-pentyl-3-(1-naphthoyl)indole, a Schedule I Controlled Dangerous Substance

known as JWH-018.  The chemist indicated that each exhibit contained a suspected new

controlled substance analogue, believed to be similar to the known analogues of JWH-018, but

that he/she couldn't identify it completely until the DEA Mid-Atlantic Laboratory received

verified standards from the Special Testing Laboratory in Dulles, VA.  The chemist indicated

that items received on April 5, 2012 were found to contain UR-144, an identified analogue of

JWH-018, a Schedule I controlled substance.

### H.  Surveillance on June 11, 2012

On June 11, 2012 at approximately 2:00 p.m., TFO David Metzler was a member of a

team of law enforcement agents who conducted stationary surveillance in the area of 27324

Camino Capistrano, Suite 155, Laguna Niguel, California, which as described above was the

address of M&C Wholesale as indicated on the invoice for the products sent to Dragon's Den

Smoke Shop in Maryland.

The structure located at 27324 Camino Capistrano can be described as rectangular-

shaped one-story business structure, containing multiple units marked as "suites".  The odd-

numbered suites all front on one side of the structure.  While the even-numbered suites all front

on the opposite side of the structure, so that odd-numbered suites are back to back with the even-

numbered ones.  Each suite also has garage entrance at its front.

While conducting surveillance, the following was observed.  On June 11, 2012, at

approximately 2:10 p.m. a silver Land Rover bearing Arizona tag ASG8551 was observed



parked in front of Suite 156. According to Arizona Motor Vehicle Administration records, this vehicle is registered to Ratchanee MCAULEY (MCAULEY), *a* white female having a July 10, 1971 date of birth. As outlined above, MCAULEY was the registered subscriber for the telephone number listed on the M&C Wholesale invoice that accompanied the suspected controlled substance analogs seized from the Dragon's Den Smoke House on April 5, 2012. According to phone records acquired pursuant to this investigation, during the time period January 1 - June 30, 2012, a phone subscribed to in the name Ratchanee MCAULEY is the most frequently contacted phone number dialed by the phone used by Daniel BOWLES.

That same day, at approximately 2:20 p.m., TFO David Metzler walked by the exterior of Suite 155, and detected an odor emanating from its garage door. This odor was recognized by TFO David Metzler through his experience in this investigation to be identical to the distinctive aroma of the vegetable matter used in the various controlled substance analogues seized in this investigation.

That same day, at approximately 3:30 p.m., TFO David Metzler observed a FedEx delivery truck arrive and park in front of 27324 Camino Capistrano, Suite 156, (See Attachment C). DEA SA Adams then observed approximately four (4) individuals exit suite 156 with FedEx boxes in hand and in a laundry basket filled with FedEx boxes. TFO David Metzler observed one of these individuals to be MCAULEY.

According to bank records, approximately $113,000 US was paid from an account in Daniel BOWLES' name to FedEx between January 1 and April 30, 2012. FedEx is an international courier of parcels.

**I. Surveillance on June 12, 2012**

On June 12, 2012 at approximately 11:40 a.m., TFO David Metzler and members of Orange County RO Enforcement Group 2 again initiated stationary surveillance in the area of 27324 Camino Capistrano, Suite 155, Laguna Niguel, California.

That same day, at approximately 12:11 p.m. the garage door of suite 155 opened as a Rapid Express delivery truck arrived. An agent assigned to the surveillance duty reported that he observed approximately five (5) individuals exit Suite 155 via the garage door, and then assisted with the unloading of the Rapid Express Delivery truck. One of these individuals was identified as Ratchanne MCAULEY by the surveillance agent by her photograph as supplied by the Arizona Motor Vehicle Administration. The individuals were observed to take the items from the delivery truck to the entrance of Suite 155, and then later into the suite itself.

That same day, at approximately 12:15 p.m., an agent assigned surveillance duties observed two pallets containing what appeared to be several white canvas bags, being removed by two individuals using a pallet jack from suite 155. These bags were similar in shape and size to that of sand bags. These pallets were then transported around the building, and taken into suite 172. The white canvas bags appeared weighted down and near full to capacity. After the pallets were placed into suite 172, TFO David Metzler observed one of the individuals who had assisted in bringing the pallets into suite 172 then enter suite 156.

That same day, at approximately 12:23 p.m., a surveillance agent observed numerous pallets being offloaded from the same Rapid Express delivery truck. Those pallets contained numerous boxes which were eventually taken by unidentified individuals into Suite 155.

That same day at approximately 12:50 p.m., a surveillance agent observed an unidentified male open one of the boxes that had been on the pallets in front of Suite 155, and



pull out what appeared to be a black foil package similar to those used for packaging the various controlled substance analog products that have been purchased and seized in this investigation.

That same day, at approximately 1:05 p.m., a surveillance agent observed MCAULEY walk out of Suite 155 with a dog, and roughly 10-15 minutes later walk back into Suite 155 with the dog.

That same day, at approximately 3:42 p.m., TFO David Metzler observed a FedEx truck arrive and park near Suite 156. TFO David Metzler then observed two unidentified persons walk out of Suite 156 with FedEx boxes and give them to the FedEx driver.

That same day, at approximately 4:36 p.m., TFO David Metzler observed MCAULEY exit Suite 156 with a blue bag under her arm, and then reenter Suite 156. A few moments later, TFO David Metzler observed MCAULEY exit Suite 156 again carrying the blue bag on her shoulder and then walk to and go inside Suite 172. The blue bag did not appear to be weighed down by any heavy objects. At approximately 4:50 p.m., TFO David Metzler then observed MCAULEY exit Suite 172 carrying the blue bag, which then appeared to contain something heavier than when it had been taken into Suite 172. MCAULEY was then observed as she ran back to and entered Suite 156.

At approximately 4:50 p.m., an unknown Asian male was then observed to exit Suite 156 and run to a red minivan. The unknown Asian male then entered the minivan and drove it to the front of Suite 156 where the unknown Asian male and an unknown Asian female who had exited Suite 156 were observed to place numerous FedEx packages taken from inside Suite 156 into the red minivan which was then driven away by the unknown Asian male

That same day, at approximately 6:05 p.m., TFO David Metzler observed MCAULEY exit Suite 156 and walk to the silver Land Rover bearing Arizona plates ASG5581. MCAULEY



was observed to place some of her personal items into the vehicle while an unidentified Asian

female who had also exited Suite 156 carried out a small white dog, and gave it to MCAULEY.

MCAULEY then put the dog into the rear seat of the vehicle and entered the driver's seat.

MCAULEY was then observed to drive the Land Rover from the area while agents followed her

to a residence located at 33762 Avendia Calita, San Juan Capistrano, California, where she was

observed to park the vehicle at the curb outside of this address, get out of the vehicle, check the

mailbox for this residence and then walk towards the front door of the residence, but from the

vantage point of the surveillance it could not be ascertained whether she actually entered that

residence.

Based on the foregoing, your affiant believes that not only is Suite 155 being used by

M&C Wholesale, but also Suites 156 and 172 are also being used in that regard. That

conclusion is supported by information recently received by your affiant.

On July 17, 2012, DEA TFO David Metzler was contacted by an employee of a courier

service who indicated that he/she has made multiple deliveries of items to M&C Wholesale and

has also picked up items for shipment from M&C Wholesale. He/she indicated that originally

M&C Wholesale was housed just in Suite 155 of 27234 Camino Capistrano, but later expanded

into Suites 156 and 172. According to this courier service employee, during his/her performance

of duties associated with the courier service, he/she has within the past month been physically

inside Suite 156 of 27234 Camino Capistrano and has observed 8-10 individuals seated around a

table handling piles of a green herb-like substance. No other sort of activity appeared to be

ongoing within the suite. According to the courier service employee, he/she had asked "Mike",

an apparent employee of M&C Wholesale, what the nature of their business was, and "Mike"

responded that they sell items wholesale to "smoke shops".

Your affiant knows through his training and experience that analogue products such as those being distributed by M&C Wholesale typically use vegetable or herb substances as a base with which an analogue substance is then combined. Once combined, the analogue and herb/vegetable substances are then typically packaged in small heat-sealed bags for retail sale, and once purchased from a "smoke shop" the contents are then smoked. In that light, the courier service employee's observations are entirely consistent M&C Wholesale being exclusively devoted to the manufacture and distribution of analogue substances.

As outlined above, M&C Wholesale apparently solicits sales of its products via fliers which are sent to retail establishment who are potential customers of M&C Wholesale. During the course of this investigation, law enforcement agents have come into possession of five (5) different fliers that have been distributed by M&C Wholesale to its customers. The list of products it has offered for sale have been exclusively items such as "Brain Freeze", which as outlined above are intended for human consumption. Thus, your affiant believes based on the observations of the courier service employee and the fliers that M&C Wholesale has distributed that its sole source of income is derived from sales of analogue substances to retail establishments.

In that regard, it appears that the target Wells Fargo Bank account (# 8964400553), has been and currently is used as a repository of those illegal proceeds. For example, after the raid on The Tobacco Stop (outlined above), employees of that establishment were interviewed and it was learned thereby that The Tobacco Stop paid for its purchases on a cash on delivery basis; issuing checks to M&C Wholesale whenever an order of controlled substance analogues was delivered. According to subpoenaed bank records, from November, 2010 and December, 2011, various checks from The Tobacco Stop worth $66,117.50 U.S. made payable to M&C Wholesale



and/or Daniel Bowles were deposited in the Wells Fargo Bank Target Account 1. According to the records of Wells Fargo Bank, that account (# 8964400553) was opened in the name M&C Wholesale, and has Daniel BOWLES and Chelsea Bowles (relationship unknown) among its signators.

More recently, subpoenaed bank records for that Target Account 1 show that on July 16, 2011, there were in aggregate $324,522.00 US deposited into that account for a single day. According to Wells Fargo Bank records, most of the deposits came from business establishments with names like "D & A Smoke Shop", "Puff N Snuff", "Hawaiian Holy Smoke", "190 Drive-Thru Smoke Shop", "North Shore Smoke Shop", "Happy Daze", "Up in Smoke" and "Sky High Smoking Accessories". In those instances, your affiant believes it is apparent that such businesses were/are similar in nature to The Tobacco Stop and Dragon's Den; i.e., shops that retail controlled substance analogues. TFO David Metzler also did internet searches and queried law enforcement about the nature of the businesses of those who wrote checks deposited in Target Account 1 whose business names did not show such an obvious connection as purveyors of controlled substance analogues; for instance, businesses named "The Cupboard", "The Other Place" and "S and K Express". According to TFO Metzler, he was able to thereby discern that even those establishments were "smoke shops" like The Tobacco Shop and "Dragon's Den".

On that basis, your affiant believes that all of the monies being deposited into Target Account 1, represent proceeds of illegal controlled substance analogue sales, and pursuant to 21 U.S.C. §881(a)(6) and (b) and 18 U.S.C. §981(b) can be seized pursuant to a judicially-issued warrant search warrant. According to Wells Fargo Bank records as of July 24, 2012, Target Account 1 has a balance of $543,019.80 U.S.

Also according to subpoenaed Wells Fargo Bank records, immediately prior to July 23, 2012, $2,200,000.00 U.S. was transferred from Target Account 1 to another Wells Fargo Bank account, #7347073269 (Target Account 2); which according to their records is an account that was opened in the name Chelsea BOWLES.  As that $2.2M had its genesis in Target Account 1, your affiant submits that there is probable cause to believe that that amount deposited in Target Account 2 is also proceeds of illegal controlled substance analogue sales.

## II. CONCLUSION

In sum, based upon the above outlined facts and circumstances, your affiant submits that there is probable cause to believe that :

a.       BOWLES and JESSOP have been involved and continue to be involved in the distribution of controlled substance analogues under the business name M&C Wholesale;

b.       in that regard, they have held out as their primary place of business as M&C Wholesale located at 27324 Camino Capistrano, Suite 155, Laguna Niguel, California;

c.       based on the above-described subpoenaed bank records, BOWLES and JESSOP have continually used Target Account 1 as a depository for the proceeds of their sales of illegal controlled substance analogues; and

d.       have recently transferred $2,200,000 U.S. of those illegal proceeds into Target Account 2.

Your affiant therefore submits that there is also probable cause to believe that Target Accounts 1 and 2 contain the proceeds of a conspiracy to distribute and manufacture controlled substance analogues of 21 U.S.C. §§ 802(32) and 846, and therefore, are subject to seizure and forfeiture pursuant to 21 U.S.C. §881(a)(6).

12-3453SAG   12-3454SAG

Your affiant attests under penalty of perjury that the facts and circumstances outlined in the foregoing Affidavit are true and accurate to the best of his knowledge and belief.

Brian Stine, Special Agent
Drug Enforcement Administration

SUBSCRIBED to and SWORN to before me this _____ day of July, 2012.

Stephanie Gallagher
UNITED STATES MAGISTRATE JUDGE

-18-



# UNITED STATES DISTRICT COURT
### for the
### District of Maryland

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| United States Currency in the Custody of Wells | ) | Case No.   **12-3454SAG** |
| Fargo Bank, to wit: $543,019.80 in Account | ) | |
| #8964400553 in the name of M&C Wholesale | ) | |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of _____ Maryland _____ is subject to forfeiture to the United States of America under ____21____ U.S.C. § ____881(a)(6)____ *(describe the property)*:

United States Currency in the Custody of Wells Fargo Bank, to wit: $543,019.80 in Account #~~896440053~~ in the name of M&C Wholesale

*8964400553*

*SAG*

The application is based on these facts:

SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT BRIAN STINE

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Brian Stine, DEA Special Agent
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____07/25/2012____

_____
*Judge's signature*

City and state: Baltimore, Maryland

Stephanie Gallagher, U.S. Magistrate Judge
_____
*Printed name and title*

AO 109 (Rev. 12/09)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT
### for the
### District of Maryland

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| United States Currency in the Custody of Wells | ) | Case No.    12-3453SAG |
| Fargo Bank, to wit: $2,200,000.00 in Account | ) | |
| #7347073269 in the name of Chelsea Bowles | ) | |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ District of _____Maryland_____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:
United States Currency in the Custody of Wells Fargo Bank, to wit: $2,200,000.00 in Account #7347073269 in the name of Chelsea Bowles

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____07/27/2012_____
                                                                                  *(not to exceed 14 days)*

☑ in the daytime – 6:00 a.m. to 10:00 p.m.          ☐ at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge _____Stephanie Gallagher_____ .
                                                                            *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30)*.

                              ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   ___07/25/2012 ~~0:00 am~~ 3:15 pm___          _____
                                                                                   *Judge's signature*

City and state:     ___Baltimore, Maryland___          ___Stephanie Gallagher, United States Magistrate Judge___
                                                                      *Printed name and title*



# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | | |
|---|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>United States Currency in the Custody of Wells<br>Fargo Bank, to wit: $2,200,000.00 in Account<br>#7347073269 in the name of Chelsea Bowles | )<br>)<br>)<br>)<br>) | Case No. **12-3453SAG** |

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____ District of

_____Maryland_____ is subject to forfeiture to the United States of America under ___21___ U.S.C. §

__881(a)(6)__ *(describe the property)*:

United States Currency in the Custody of Wells Fargo Bank, to wit: $2,200,000.00 in Account #7347073269 in the name of Chelsea Bowles

The application is based on these facts:

SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT BRIAN STINE

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Brian Stine, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___07/25/2012___

_____
*Judge's signature*

City and state: Baltimore, Maryland

Stephanie Gallagher, U.S. Magistrate Judge
*Printed name and title*

AO 109 (Rev. 12/09)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

District of Maryland

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>United States Currency in the Custody of Wells<br>Fargo Bank, to wit: $543,109.80 in Account<br>#8964400553 in the name of M&C Wholesale | )<br>)<br>)  Case No.  **12-3454SAG**<br>)<br>) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ District of _____Maryland_____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:
United States Currency in the Custody of Wells Fargo Bank, to wit: $543,109.80 in Account #~~8964400553~~ in the name of M&C Wholesale

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before     _07/27/2012_
*(not to exceed 14 days)*

☑ in the daytime – 6:00 a.m. to 10:00 p.m.          ☐ at any time in the day or night, as I find reasonable
cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge _____Stephanie Gallagher_____ .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.

☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _07/25/2012 ~~9:00 am~~ 3:15pm_          _____
*Judge's signature*

City and state:   _Baltimore, Maryland_          Stephanie Gallagher, United States Magistrate Judge
*Printed name and title*

**MEMORANDUM**

| | |
|---|---|
| DATE: | November 28, 2012 |
| TO: | Kristine Cupp<br>U.S. Marshal Service |
| FROM: | Naquita C. Ervin<br>FSA Paralegal Specialist<br>U.S. Attorney's Office - District of Maryland |
| RE: | **U.S. v. $2,200,000 U.S. CURRENCY** |
| | **Civil Action No.** |
| | **CATS ID 12-DEA-570999 – GC-11-0088** |

The United States has filed a forfeiture action against **$2,200,000 U.S. CURRENCY.** A copy of the Complaint for Forfeiture is attached.

Notice of this seizure will be published at **www.forfeiture.gov** pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.

Thank you.


Attachment

U.S. Department of Justice
United States Marshals Service

**PROCESS RECEIPT AND RETURN**

| | |
|---|---|
| PLAINTIFF<br>**UNITED STATES OF AMERICA** | COURT CASE NUMBER |
| DEFENDANT<br>**$2,200,000 U.S. Currency** | TYPE OF PROCESS<br>Verified Complaint in Rem |

| SERVE ▶ AT | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN<br>**GC-11-0088 / 12-DEA-570999** |
|---|---|
| | ADDRESS (Street or RFD, Apartment No., City, State, and ZIP Code) |

| SEND NOTICE OF SERVICE TO REQUESTER AT NAME AND ADDRESS BELOW: | |
|---|---|
| Naquita C. Ervin, FSA Paralegal Specialist<br>U.S. Attorney's Office<br>36 S. Charles Street, 4th floor<br>Baltimore, Maryland 21201 | Number of process to be served with this Form - 285 |
| | Number of parties to be served in this case |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Address, All Telephone Numbers, and Estimated Times Available For Service)

Arrest property. Fill in the date of arrest in this process receipt and return our copy.

| Signature of Attorney or other Originator requesting service on behalf of : | TELEPHONE NUMBER<br>**410-209-4800** | DATE<br>11/28/12 |
|---|---|---|

### SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated.<br>*(Sign only first USM 285 if more than one USM 285 is submitted)* | Total Process<br>No.____ | District of Origin<br>No.____ | District to Serve<br>No.____ | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc. at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below).

| Name and title of individual served (If not shown above). | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|
| Address (complete only if different than shown above) | Date of Service | Time<br>am<br>pm |
| | Signature of U.S. Marshal or Deputy |

| Service Fee | Total Mileage Charges<br>*(including endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount Owed to US Marshal or | Amount or Refund |
|---|---|---|---|---|---|---|

REMARKS:

PRIOR EDITIONS MAY BE USED          SEND ORIGINAL + 2 COPIES to USMS.

1. CLERK OF COURT  2. USMS Record  3. Notice of Service  4. Billing Statement  5. Acknowledgment of Receipt