UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

_____

UNITED STATES OF AMERICA

      Plaintiff

v.

$2,200,000.00  U. S. CURRENCY (Bowles);

      Defendant.

_____

M&C WHOLESALE, LLC

      Claimant

v.

UNITED STATES OF AMERICA

      Respondent.

Civil No.  1:12-cv-03501-ELH

## CLAIMANT'S MOTION TO DISMISS AMENDED COMPLAINT
## AND ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the due process

clause of the Fifth Amendment to the Constitution of the United States, M&C Wholesale, LLC, a

California Limited Liability Company ("Claimant") moves to dismiss the Amended Complaint.

The Amended Complaint fails to state a claim upon which relief may be granted as it fails to

allege a nexus between the U.S. currency seized and any acts upon which a forfeiture of said

funds could be based.  The Amended Complaint fails to allege what portion of the seized funds

relate to alleged violations of federal law in connection with the substances designated as UR-

144, AM-2201 and MAM-2201.  The Amended Complaint also fails to allege a basis for seizure

of funds on deposit before March 1, 2011, the date JWH-018 became a Schedule I controlled substance.

The Amended Complaint also fails to state a claim upon which relief may be granted as it fails to allege mens rea, which is an essential element of the Controlled Substances Act violation alleged in the forfeiture matter, and/or does not allege the Claimant knew it was violating any law.

The Amended Complaint should also be dismissed because the Federal Analogue Act is unconstitutionally vague as applied to the substances at issue under the present conditions. Finally, the Amended Complaint should be dismissed because it fails to state with sufficient particularity the nexus between Claimant's alleged unlawful conduct and the assets sought to be forfeited. Alternatively, Claimant moves pursuant to Rule 12(e) of the Federal Rules of Civil Procedure for a more definite statement of any such asserted nexus.   Said motions are supported by the following Memorandum.

MEMORANDUM

I.      LEGAL AND FACTUAL BACKGROUND.

The property at issue was seized pursuant to Seizure Warrants issued by this Court relating to property seized in the States of California and Utah.  The Amended Complaint should be dismissed for at least four separate reasons.  First, the Amended Complaint is fatally deficient because it fails to allege a nexus between the currency seized and underlying unlawful conduct. The Agent's Declaration goes to considerable lengths to describe conduct relating to the attempted forfeiture of checks and money orders, but does not properly allege, with any personal knowledge or other evidence, that the cash seized was related to any of the transactions identified in the Agent's Declaration.  Second, the Amended Complaint is fatally deficient because it fails to allege an essential element of the alleged underlying  unlawful activity – violations of the

Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.* The missing element is that of *mens rea, i.e.,* that Claimant actually knew that the substances at issue were unlawful.

The third reason the Court should dismiss the Amended Complaint is related to the second. The statute on which the government relies – the Federal Analogue Act, 21 U.S.C. § 802(32) – is unconstitutionally vague as applied to the three substances at issue under the present circumstances. A person of ordinary intelligence would have no way to reasonably learn that these substances are unlawful and thus have an opportunity to conform their conduct to the requirements of law. This difficulty may explain why the Amended Complaint fails to allege that Claimant had such guilty knowledge.

Fourth, a recent U.S. District Court ruling held that the chemical structure of UR-144 is not substantially similar to the chemical structure of JWH-018 and, therefore, is not an analogue.  A true and correct copy of the Decision and Order is submitted herewith as Exhibit "A".

Finally, the Amended Complaint should be dismissed because it fails to establish with sufficient particularity the nexus between Claimant's alleged unlawful conduct and the assets sought to be forfeited.  The Amended Complaint alleges no illegal conduct by Claimant whatsoever and, particularly, the Amended Complaint does not allege that Claimant had the requisite mens rea to support an allegation of unlawful conduct and a forfeiture of Claimant's assets.  The Amended Complaint is silent as to any allegation that Claimant, its employees, agents or members knew that either AM-2201 or UR-144 is an unlawful analogue.  Plaintiff also omits any allegation that Claimant or its agents, employees, or members knew the items sold to The Tobacco Stop would be sold for human consumption.  While the Amended Complaint does allege that the owner of The Tobacco Stop, Dev Vahadura Hamal ("Hamal"), may have made statements to Plaintiff, those statements are in no way linked to Claimant.  For these reasons alone, the Amended Complaint

should be dismissed or, at a minimum, Plaintiff should be ordered to provide a more definite statement.

    A.  <u>The Legal Theory Underlying Plaintiff's Amended Complaint</u>.

The Amended Complaint asserts that the property at issue is to be forfeited because it either facilitated or represented the proceeds of violations of the Controlled Substances Act, 21 U.S.C. § § 801, *et seq.* As for the controlled substances violations, the Amended Complaint asserts that three illegal substances were distributed by Claimant, or someone else, to The Tobacco Stop and Dragon's Den Smoke Shop.  At no point does it allege a nexus between unlawful substances being sold or delivered to anyone and the funds sought to be forfeited.  The Amended Complaint also alleges that Claimant, or someone, distributed three different substances:  UR-144 (1 - Pentylindol-3-yl(2,2,3,3-tetramethylcyclopropyl)methanone), AM-2201 [1(5-fluoropentyl)-1 H-indol-3yil-1-naphathalenyl-methanone) and MAM-2201 (1-(5-fluoropentyl)-1H-indol-3-yl)(4-methyl-1-naphthalenyl)-methanone).

UR-144 is not a listed controlled substance under Federal law.  Instead, the Government claims that UR-144 is unlawful on the theory that it is an analogue of a third substance that is listed as a controlled substance, JWH-018.  Plaintiff also alleges that AM-2201and MAM-201 show substantial chemical structural similarities with JWH-018.[1]  Accordingly, Plaintiff's authority to forfeit the property at issue turns on an application of the Federal Analogue Act, 21 U.S. C. §802 (32)(A).

    B.    <u>The Regulation of Controlled Substance Analogues</u>.

---

[1]  The Attorney General has the authority pursuant to 21 U.S.C. § 811(h) to temporarily add a substance to Schedule I to avoid an imminent hazard to the public safety. This action may only be taken, however, thirty days after the Attorney General has published a formal notice of an intention to do so, thus enabling the public to be aware of the forthcoming change in the legal status of the substance. 21 U.S.C. § 811(h)(1)(A). The Attorney General added JWH-018 on an emergency basis as a controlled substance in March 2011 after providing the required notice.

Title 21 U.S.C. § 813 provides that a controlled substance analogue shall, to the extent intended for human consumption, be treated as a controlled substance. The term controlled substance analogue is defined by Title 21 U.S.C. § 802(32)(A) to mean a substance–

> (i)  the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;
>
> (ii)  which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or
>
> (iii)  with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

The first of the three prongs above is read in the conjunctive with the remaining two prongs. That is, for a substance to be an analogue, it must have a chemical structure that is substantially similar to a controlled substance *and* it must either have a substantially similar effect on the central nervous system *or* be represented or intended to have such an effect. *United States v. Turcotte,* 404 F.3d 515, 521-23 (7th Cir. 2005); *United States v. Roberts,* 363 F.3d 118, 121 (2d Cir. 2004); *United States v. Klecker,* 348 F.3d 69, 71 (4th Cir. 2003); *United States v. Hodge,* 321 F.3d 429, 433 (3d Cir. 2003); *United States v. Washam,* 312 F.3d 926, 930 n.2 (8th Cir. 2002); *United States v. Brown,* 279 F.Supp.2d 1238, 1240 (S.D. Ala. 2003); *United States v. Vickery,* 199 F.Supp.2d 1363, 1371 (N.D. Ga. 2002); *United States v. Clifford,* 197 F.Supp.2d 516, 5 19-20 (E.D. Va. 2002); *United States v. Forbes,* 806 F.Supp. 232, 235 (D. Colo. 1992). *Cf. United States v. Fisher,* 289 F.3d 1329, 1338 (11th Cir. 2002) (noting but declining to reach issue); *United States v. Brown,* 415 F. 3d 1257, 1261 (11th Cir. 2005)(assuming conjunctive interpretation). In addition, the *mens*

*rea* from the underlying controlled substance offense carries over to violations of the analogue offense – to be guilty "the defendant must know that the substance at issue meets the definition of a controlled substance analogue." *Turcotte,* 404 F.3d at 527; *Roberts,* 363 F.3d at 123.

II.     THE  AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

The Supplemental Rules governing civil forfeiture actions impose a "heightened burden for pleading on the plaintiff" beyond that in ordinary civil actions in light of the "drastic nature" of the remedies available. *United States v. All Assets,* 571 F.Supp.2d 1, 16 (D.D.C. 2008). Where a complaint fails to allege the essential element of *mens rea,* it is subject to dismissal. *Panama v. BCCI Holdings,* 119 F.3d 935, 949 (11th Cir. 1997). In the context of a civil forfeiture action, "the government's showing of probable cause must encompass both the prohibited conduct and the mental state required by the statute." *United States v. Dollar Bank Money Market Account,* 980 F.2d 233, 236 (3d Cir. 1992).

The Amended Complaint alleges that UR-144, AM-2201, and MAM-2201 have been found to have a substantially similar chemical structure as well as a substantially similar pharmacological effect as the Schedule I controlled substance JWH-018.  The Amended Complaint does not, however, identify who made such findings, when they did so, or who could have had notice of such findings. And, most critical here, the Amended Complaint does not allege that Claimant knew that UR-144, AM-2201, or MAM-2201 was an analogue of JHW-018 or any other controlled substance. For this reason, the Amended Complaint wholly fails to allege any unlawful conduct by Claimant or any basis for the seizure or forfeiture of its assets. The Amended Complaint should be dismissed because it fails to state a claim upon which relief may be granted.

III.    THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THE
        FEDERAL ANALOGUE ACT IS UNCONSTITUTIONAL AS APPLIED TO UR-
        144, MAM-2201 AND AM-2201 UNDER THE PRESENT CIRCUMSTANCES.

        A.    The Analogue Act Is Unconstitutionally Vague.

Although the Court need go no further than the failure of the Amended Complaint to

allege *mens rea* to grant Claimant's motion, a ruling limited to the insufficiency of the Amended

Complaint may invite unnecessary additional litigation as the government could elect to re-litigate

the remaining issues addressed below by way of further civil or criminal filings. Claimant thus

respectfully submits that overall fairness and the interests of judicial economy would best be

served by the Court going further to address both the constitutionality of the analogue statute as

applied to these substances, as well as the substantive question of whether either substance is in

fact an unlawful analogue.

Turning first to the constitutional issue, this case presents a textbook example of a statute that

is unconstitutionally vague as applied. While the analogue statute may pass facial constitutional

muster and be capable of constitutional application under other circumstances involving different

substances, its application to UR-144, AM-2201, and MAM-2201 under the present

circumstances violates Claimant's Fifth Amendment guarantee of due process of law.

The applicable law is well established. "[A] statute which either forbids or requires the

doing of an act in terms so vague that men of common intelligence must necessarily guess at its

meaning and differ as to its application violates the first essential of due process of law." *Connally

v. General Constr. Co.,* 269 U.S. 385, 391 (1926). "[B]ecause we assume that man is free to steer

between lawful and unlawful conduct, we insist that the laws give the person of ordinary

intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."

*Grayned v. City of Rockford,* 408 U.S. 104, 108-09 (1972). A statute is unconstitutionally vague if

it fails to provide adequate notice of the proscribed conduct. *Kolender v. Lawson,* 461 U.S. 352, 357

(1983). The Constitution does not permit a person to "be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss,* 347 U.S. 612, 617 (1954).

As noted, the Amended Complaint does not allege that Claimant knew that UR-144, AM-2201 or MAM-2201 is an analogue of JWH-018 or that any of these substances is unlawful. But going further, the Amended Complaint does not even assert that Claimant knew that the DEA or any other governmental entity considered either substance to be an unlawful analogue. Indeed, the Amended Complaint provides no basis for belief that *anyone outside the government* knew, prior to the issuance of the instant seizure warrants, that the government considered UR-144, MAM-2201, and AM-2201 to be analogues of JWH-018 or otherwise unlawful. There is a good reason for this omission in the Amended Complaint. As set forth below, it actually was not possible for a person to learn prior to these seizures that the United States government considered either UR-144, MAM-2201, or AM-2201 to be analogues of JWH-018 or otherwise unlawful.

Although the Congress recently added twenty-six new synthetic chemicals to the list of Schedule I controlled substances in the Synthetic Drug Abuse Prevention Act of 2012 (S.3 187 July 9, 2012), notably this law did not include UR-144, AM-2201 or MAM-2201.  Indeed a casual internet search regarding either AM-2201 or MAM-2201 reflects a common consensus in the public that these substances were (and still are) lawful.  AM-2201 and MAM-2201 are, as of this filing, offered for sale over the internet from Cayman Chemical in Ann Arbor, Michigan.  See https://www.caymanchem.com/app/template/Product.vm/catalog/10203 (AM-2201); and https://www.caymanchem.com/app/template/Product.vm/catalog/9001219  (MAM-2201).

The first publicly available document in which the government provided notice that it considers UR-144 to be unlawful was an April 13, 2013, Notice of Intent issued by the DEA

stating that three substances, including UR-144, would be temporarily added to Schedule I.
Notice of Intent, 78 Fed. Reg. 21858 (Apr, 13, 2013).  On May 16, 2013 – almost ten months after
the seizures at issue here -- the Attorney General added UR-144 to Schedule I under his emergency
authority.  Final Order, 78 Fed. Reg. 28735 (May 16, 2013).  No public notice existed prior to the April
2013 Notice of Intent that this substance is considered to be unlawful.

Indeed, the Amended Complaint lacks any allegation that Claimant knew the products sold
contained illegal substances.  The Amended Complaint states that a representative of Claimant told
government agents that Claimant's products contained UR-144.  Until May 2013, UR-144 was not
an unlawful substance.  Secondly, Plaintiff alleges no facts, other than the agent's secret thoughts and
conclusions, that Claimant knew that AM-2201, UR-144, and MAM-2201 were illegal.

B.  Prong One of the Analogue Act is Unconstitutionally Vague as Applied to AM-
2201 and MAM-2201.

The first issue presented is the application of the statutory phrase in the first prong of the
analogue statute, which proscribes AM-2201 only if the chemical structure of those substances "is
substantially similar to the chemical structure" of JWH-018. 21 U.S.C. § 802(32)(A)(i).
The District Court for the District of Colorado, dismissed an indictment because this language
was unconstitutionally vague as applied to another alleged analogue similar to those at issue here
and expressed the view that "this standard incorporates a scientific term of art and requires
reference to the appropriate fields of chemistry and pharmacology to determine its meaning." *United
States v. Forbes,* 806 F.Supp. 232, 237 (D. Colo. 1992).

While similarity of chemical structures certainly requires reference to scientific principles of
chemistry, the modifier of "substantially" similar is *not* a scientific term.  The Amended Complaint
alleges that UR-144, AM-2201 and MAM-2201 are substantially similar to JWH-018, but fails to
identify who made the finding, the basis upon which the finding was made, and how Plaintiff would
have received notice of such finding.  As referenced above, as recently as one month ago, the U.S.

District Court for the Eastern District of Wisconsin specifically found that UR-144 was not and is not an analogue. *See* Ex. A.  Accordingly, the Amended Complaint should be dismissed for allegations relating to a substance that, at the time of seizure of Plaintiff's property, was not illegal.

IV.     THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE UR-144, MAM-2201 AND AM-2201 ARE NOT ANALOGUES OF JWH-018.

A.   UR-144 Is Not An Analogue And Was Not An Illegal Substance Until May 2013.

On May 21, 2013, the United States District Court for the Eastern District of Wisconsin held that UR-144 is not an analogue of the illegal substance JWH-018 and, accordingly, UR-144 was not an illegal substance under the Controlled Substances Analogue Act until the U.S. Attorney General listed UR-144 as an illegal substance pursuant to his emergency powers.  In The Smoke Shop, LLC v. USA, et al., Case No. 12-C-1186, (Exhibit "A"), Plaintiff sought an order to return seized products allegedly containing UR-144 and XLR-11, which the government alleged were analogues of the illegal substance JWH-018.  After hearing and substantial briefing and argument, Judge Randa found and held the following:

1.   On May 16, 2013, the DEA issued a final order to temporarily schedule UR-144 pursuant to the temporary scheduling provisions of the Controlled Substance Act 21 U.S.C. §811(h);

2.   The overwhelming weight of opinion in the scientific community is that the chemical structure of UR-144 is not substantially similar to the chemical structure of JWH-018;

3.   But for the DEA's scheduling of UR-144, the Court would have ordered Plaintiff's property returned;

4.   The decision to schedule UR-144 suggests that it was not an analogue in the first instance;

5.  It is unfair for a federal agency to seize the property of a small business owner and then keep it until the property is declared illegal; and

6.  Plaintiff could amend the Amended Complaint and state a federal tort claim for conversion.

The Smoke Shop v USA case is illustrative.  First, UR-144 is not an analogue.  Second, UR-144 did not become a banned substance until May 16, 2013.  Third, it is undisputed that all funds sought to be forfeited were seized nearly one year ago, in July 2012, long before UR-144 became a banned substance.

B.  AM-2201 And MAM-2201 Are Not Analogues OF JWH-018 Under The Federal Analogue Act.

As referenced above, a federal court of competent jurisdiction has ruled that UR-144 is not an analogue.   Similarly, Plaintiff's Amended Complaint should be dismissed in that neither AM-2201 nor MAM-2201 is an analogue of JWH-018 under the Federal Analogue Act.  Dr. James R. McCarthy, a Professor in the Department of Chemistry and Chemical Biology at the Indiana University-Purdue University Indianapolis, opines that neither UR-144, AM-2201 nor MAM-2201 is an analogue of JWH-018.  A true and correct copy of Dr. McCarthy's Affidavit is submitted herewith as Exhibit "B".

As referenced by Dr. McCarthy, the chemical components of AM-2201 and MAM-2201 are considerably different than the chemical components of JWH-018.  Plaintiff's Amended Complaint, without any foundation whatsoever, baldly alleges that AM-2201 and MAM-2201 are illegal substances.  Plaintiff's agent does not allege he is a chemist, does not allege that he has done any research and, finally, does not allege that he has any personal knowledge as to the chemical makeup of AM-2201, MAM-2201 or, indeed, JWH-018.  Accordingly, Plaintiff's claims with regard to AM-2201 or MAM-2201 should be dismissed.

Joseph P. Bono, worked as a chemist and forensic expert for the Drug Enforcement Administration from 1988 through 2011.  Mr. Bono opines that AM-2201, MAM-2201, XLR-11 and UR-144 are not compounds with a chemical structure substantially similar to a Schedule I or Schedule II controlled substance.  In connection with his prior employment with the DEA, Mr. Bono has special and specific knowledge as to the Controlled Analogue and Enforcement Act of 1986 [14 USC §§802, 813] and specific knowledge as to the particular substances named in Plaintiff's Complaint.  Mr. Bono's Declaration is attached hereto as Exhibit "C".

Mr. Bono opines, in part, as follows:

1.  Neither the Analogue Act nor the scientific community have a general definition as to "analogue" or "substantially similar";

2.  The term "substantially similar" has no consensus definition accepted in the scientific community because the term is referenced as a legal concept rather than as a scientific concept;

3.  Two-dimensional stick and letter drawings of molecules do not represent real chemical structures;

4.  Three-dimensional molecular models must be included as a part of any discussion related to "structural similarity"; and

5.  The chemical structures of AM-2201, MAM-2201, XLR-11 and UR-144 are not structurally similar to the controlled substance, JWH-018.

The applicable law is well established.  "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."  Connally v. General Const. Co. , 269 U.S. 391 (1926).  "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that the laws give the person or ordinary intelligence a reasonable

opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972).  A statute is constitutionally vague it if fails to provide adequate notice of the proscribed conduct.  Kolender v. Lawson, 461 U.S. 352, 357 (1983).  The constitution does not permit a person to "be held criminally responsible for conduct which he could not reasonably understand to be proscribed."  United States v. Harriss, 347 U.S. 612, 617 (1954).

> ### C.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT LACKS SUFFICIENT PARTICULARITY.

The instant case presents a two-fold problem for Plaintiff.  First, Plaintiff bears the burden of proving what portion of the assets it attempts to forfeit relates to the distribution of products containing UR-144, MAM-2201, and AM-2201.  This burden is nearly impossible for Plaintiff to prove as it does not have the products or evidence to trace proceeds allegedly received as a result of the sale of any of the products.  Second, Plaintiff has not alleged what portion of the $2.2 million in cash it seized relates to the sale of alleged analogue products, namely, AM-2201 and MAM-2201.  Thirdly, Plaintiff merely alleges, with specificity, the funds identified and seized in attachments A, B and C.  These amounts total $370,215.50.  Plaintiff's Amended Complaint is deficient in that the only reference it makes to funds deposited in Claimant's bank account totaled less than $67,000.00.  Accordingly, Plaintiff fails to allege the source of the $2.2 million in U.S. currency seized from Claimant's bank account.

As noted above, a forfeiture complaint must be pled with particularity.  Here the Amended Complaint alleges various activities relating to a number of individuals, including Claimant, regarding the alleged distribution of UR-144, MAM-2201, and AM-2201.  The Amended Complaint makes little or no effort to connect those activities with the specific assets sought to be forfeited.  For example, Plaintiff's Complaint appears to allege illegal activity in the sale of analogues along with the allegation that "it appears that the target Wells Fargo Bank account … has been and currently is

used as a repository of those illegal proceeds."  More interesting yet, the Government seeks to seize

funds in an account belonging to Chelsea Bowles, not M&C Wholesale.

Plaintiff suggests that based upon sales by Claimant to the Tobacco Stop from November,

2010, through December, 2011, in the sum of $66,117.50, nearly $2.2 million are transformed into

proceeds from the sale of analogues.  Plaintiff alleges, without any proof whatsoever, that the checks

from the Tobacco Stop totaling $66,117.50 made payable to M&C Wholesale, somehow taint the

entire $2.2 million contained within the accounts of Claimant and Chelsea Bowles.  Plaintiff does not

allege and cannot prove that all payments from Tobacco Stop to M&C Wholesale resulted from

illegal sales.  Such a leap is impermissible.  Plaintiff should be required to specifically present all

evidence to the Court and Claimant that connects nearly $2.2 million in assets to specific alleged

sales of analogues.   Plaintiff cannot carry its burden to prove that Claimant's funds were the

proceeds of illegal sales of analogues.

Plaintiff also seeks to also forfeit over $300,000.00 in checks and money orders intercepted by

Plaintiff.  Again, Plaintiff faces the same problem in that, while it can identify the monies proceeded

from smoke shops, it has not alleged what specific products resulted in payment of the funds to

Claimant.  In other words, Plaintiff has not alleged what portion of Claimant's property related to the

sale of products containing UR-144.  Plaintiff also has not alleged what portion of the seized funds

relates to the sale of products contained MAM-2201 and AM-2201.  The distinction is important in

that, until May 2013, products containing UR-144 were not illegal.  Rather than alleging facts to

inform Claimant of Plaintiff's accusations, Plaintiff merely concludes that all seized property

somehow resulted from the sale of products containing illegal substances.

A brief review of the Declaration that forms the basis of Plaintiff's Amended Complaint is

telling.  Paragraph 78 merely alleges signators on the Wells Fargo account.  Paragraph 78 merely

alleges the amount of money deposited into the account on July 16, 2011.  Finally, in Paragraph 80,

Plaintiff alleges "most of the deposits came from business establishments with names like D&A

Smoke Shop…"  Plaintiff cannot go beyond its allegation that "most of the deposits" came from

certain businesses.

The above is the entire basis Plaintiff alleges to seize over $2.5 million of Claimant's funds.

Plaintiff's Amended Complaint simply fails to state a cause of action as to why it seeks to forfeit

nearly $2.2 million of Claimant's property.

Plaintiff asserts that observations of a single un-named courier service employee and

flyers allegedly distributed by Claimant somehow evidence that Claimant's "sole source of income is

derived from sales of analogues substances to retail establishments".  (Affidavit in Support of

Application for Search Warrant, Procedure Warrant, Page 15).  Interestingly, Plaintiff fails to identify

the employee or the period of time in which the employee allegedly witnessed Claimant's operations

and has not even identified the recipients or locations of the Claimant's alleged flyers.  Rather,

Plaintiff assumes that since approximately 3% of Claimant's funds resulted from sales to the Smoke

Stop, that the other remaining 97% of the funds must also be, somehow, illegal.

Claimant disputes the accuracy of Plaintiff's allegations, but taking them on their face in the

context of a Motion to Dismiss, they fail to satisfy the particularity required by the Rules for at least

two reasons.  First, the allegations lead to a reasonable inference that 97% of Claimant's property

may have been derived from other endeavors.  Plaintiff can only evidence $66,117.50 in checks

made by the Tobacco Stop to Claimant over a one year period.  Plaintiff then simply asserts that on

July 16, 2011, there were aggregate deposits totaling $324,522.00 in Claimant's account.  Plaintiff's

agent then alleges, without any specificity whatsoever, that he "did internet searches and queried law

enforcement about the nature of the businesses of those who wrote checks".  The agent then asks the

Court to simply trust him and that "he was able to thereby discern that even those establishments

were 'smoke shops' like the Tobacco Stop and Dragon's Den".  (Affidavit, Page 16).

Nowhere in the Amended Complaint does it allege, with any specificity, that Claimant's funds were derived from the illegal sale of analogues.  Such is manifest by the fact that Plaintiff seized the exact sum of $2,200,000.00 from target account 2, rather than some odd amount that would coincide with the sums alleged in Plaintiff's Affidavit.  Plaintiff throws around various sums in the Amended Complaint, the substance of which do not approach the sums seized by Plaintiff. This leads to the reasonable conclusion that Plaintiff simply seized whatever amounts it wanted without any support.

Next, the Court should immediately dismiss Plaintiff's Amended Complaint with respect to any of Claimant's funds that were on deposit in Claimant's account relating to AM-2201 prior to July 7, 2012. As referenced in Paragraph 21 of Plaintiff's agent's Declaration, AM-2201 became a Schedule I controlled substance on July 7, 2012.  To Claimant's knowledge, MAM-2201 has not been scheduled as a controlled substance.  As referenced above, UR-144 became a Schedule I controlled substance in May 2013.  Further, Plaintiff's Amended Complain should be dismissed and Claimant should receive immediate return of all funds in Claimant's account relating to allegations of UR-144 prior to May 2013.  For example, Plaintiff alleges that on July 16, 2011, at least $324,522.00 remained in Plaintiff's account.   All funds over that amount should be immediately returned.

Second, Plaintiff should be required to specifically allege what portion of the funds seized from Claimant's account on July 25, 2012, related to products containing AM-2201, MAM-2201, and UR-144.

Finally, Plaintiff's Amended Complaint fails to state a cause of action upon which it is entitled to seize any funds whatsoever that were in Claimant's account prior to March 1, 2011.  As acknowledged in Paragraph 22 of Plaintiff's agent's Declaration, JWH-018 became a Schedule I controlled substance on or about March 1, 2011.  Prior to that date, there were no substance could

have been an unlawful analogue of JWH-018.  Plaintiff has not and cannot allege any illegal activity which would render those funds fruits of illegal conduct.

Due process requires Plaintiff to properly allege and prove that it is entitled to seize Claimant's property.  As demonstrated above, Plaintiff's Amended Complaint is grossly deficient. Mere unsupported general allegations are insufficient to proceed.  Claimant requests that the Court grant Plaintiff's Motion to Dismiss with prejudice and return Claimant's property.   See <u>United States v. All Assets</u>, supra.

D.  <u>CONCLUSION</u>.

For the reasons set forth above, the Amended Complaint should be dismissed. The Amended Complaint omits any allegation that Claimant knew UR-144, MAM-2201, or AM-2201 were unlawful products and, therefore, fails to state a claim upon which relief can be granted. The failure of the Amended Complaint to allege *mens rea,* while fatal, is entirely understandable. The reason the Amended Complaint fails to allege Claimant knew UR-144, MAM-2201, and AM-2201 are analogues of JWH-01 8 is almost certainly because no such evidence exists. To the contrary, evidence exists that UR-144, MAM-2201, and AM-2201 are *not* analogues of JHW-018.   In any event, the inability of a person of ordinary intelligence to learn that UR- 144, MAM-2201, or AM-2011 were deemed unlawful prior to these seizures renders the Analogue Act unconstitutionally vague as applied here.  Further, the Amended Complaint completely fails to identify what portions of Claimant's property were seized pursuant to alleged sales of UR-144, MAM-2201, or AM-2201.  Finally, the Amended Complaint is also subject to dismissal for lack of particularity. In the alternative, the government should be required to provide a more definite statement so that Claimant may frame a meaningful responsive pleading.

E.  <u>REQUEST FOR EVIDENTIARY HEARING</u>.

Claimant requests an evidentiary hearing on the Constitutional issue presented in Part III of this Memorandum. While a Motion to Dismiss would ordinarily be decided from a review of the four corners of the complaint, here the face of the Amended Complaint presents a question of whether the law underlying it is unconstitutionally vague as applied. This question may require an evidentiary hearing to resolve.

Respectfully submitted this 18th day of July, 2013.

/s/ Randall L. Skeen
Specially admitted Pro Hac Vice
And appearing specially for
    Claimant/Defendant
rkseen@skeenandrobinson.com
COOK, SKEEN & ROBINSON, LLC
5788 South 900 East
Salt Lake City, Utah 84121
Telephone:  (801) 266-7414
Facsimile:  (801) 892-5067


/s/ William R. Feldman
WILLIAM R. FELDMAN
Attorney for Claimant
wrflaw@aol.com
451 Hungerford Drive, Suite 210
Rockville, MD 20850
Telephone: (301) 469-3618
Facsimile:   (301) 469-3611

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 18th day of July, 2013, a true and correct copy of the foregoing

Claimant's Motion to Dismiss Amended Complaint and Alternative Motion for More Definite

Statement was electronically filed with the Clerk of the Court using the CM/ECF system which

will send notification of such filing by e-mail to the following:

Philip S. Jackson
Assistant United States Attorney
36 South Charles Street Fourth Floor
Baltimore MD 21201

<u>/s/ Mary L. Ballingham</u>
SECRETARY